**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on April 30, 2014, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: April 30, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 13-14494 |
| | ) | |
| LUANN MITCHELL, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |

MEMORANDUM OF OPINION[1]

Debtor Luann Mitchell seeks to avoid the judicial liens of creditors Western

Reserve Area Agency on Aging and Cuyahoga County Clerk of Courts pursuant to

11 U.S.C. § 522(f)(1). Creditor Western Reserve Area Agency on Aging seeks a

determination pursuant to Federal Rule of Bankruptcy Procedure 4003(b)(1) that

the debtor is not entitled to claim an exemption in real property she uses as her

residence, or, in the alternative, that the debtor may only claim an exemption no

greater than the maximum permitted under Ohio law on the dates that the

_____

[1] This Opinion is not intended for official publication.

creditor's liens arose. For the reasons that follow, the Court overrules Western Reserve Area Agency on Aging's objection and finds that the debtor has a valid homestead exemption limited to the value of the debtor's interest in the property absent any liens, or $85,000. Accordingly, the Court grants the debtor's motion to avoid the judicial liens held by creditors Western Reserve Area Agency on Aging and Cuyahoga County Clerk of Courts. Western Reserve Area Agency on Aging's judicial liens (Judgment Lien Case Nos. JL-08-354022 and JL-10-423499) and Cuyahoga County Clerk of Courts's judicial liens (Judgment Lien Case Nos. JL-12-570021, JL-13-577977 and JL-13-583202) are fully avoided.

## I. JURISDICTION

The Court has jurisdiction over this matter. Proceedings regarding the allowance of an exemption from property of the estate, as well as proceedings regarding the extent and priority of a lien, are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (K). Core proceedings fall within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following findings of fact are undisputed unless otherwise indicated.

Creditors Western Reserve Area Agency on Aging ("Western Reserve") and the Cuyahoga County Clerk of Courts ("Cuyahoga County") each hold judgment

2

liens against the debtor relating to earlier litigation in Cuyahoga County, Ohio, courts.

Western Reserve's two judicial liens against the debtor arose from attorney's fee awards in litigation before the Cuyahoga County Probate Court and Ohio Eighth District Court of Appeals. The debtor served as the guardian and counsel of record for Ms. Bertha Washington in an action for declaratory judgment against Western Reserve filed in the Cuyahoga County Probate Court on February 15, 2002. *L. Mitchell, Guardian for Bertha L. Washington, Incompetent, v. Western Reserve Area Agency on Aging*, Case No. 2002-ADV-59296 (Cuyahoga Cty. Prob. Ct. June 26, 2002). The action was dismissed, and Western Reserve moved for a post-judgment award of attorney's fees pursuant to Ohio Revised Code § 2323.51 and Ohio Rule of Civil Procedure 11. The Probate Court granted the motion and entered judgment against the debtor for $32,154.79 plus post-judgment interest. On December 3, 2008, the Probate Court judgment was recorded as a judicial lien against the debtor with the Cuyahoga County Probate Clerk of Courts in Judgment Lien Case No. JL-08-354022 (the "First Lien"). The debtor unsuccessfully appealed the Probate Court's judgment to the Eighth District Court of Appeals. *Luann Mitchell, Guardian v. Western Reserve Area Agency on Aging*,

3

Case No. CA-08-091546, 2009 WL 4856864 (Ohio Ct. App. 8th Dist., Dec. 17, 2009). Following the debtor's unsuccessful appeal, Western Reserve filed a motion with the appellate court for sanctions under Ohio Rule of Appellate Procedure 23. On February 3, 2010, the Court of Appeals awarded Western Reserve attorney's fees of $6,475.00, which were recorded as a judicial lien against the debtor with the Cuyahoga County Clerk of Courts in Judgment Lien Case No. JL-10-423499 (the "Second Lien").

Cuyahoga County's three judicial liens arose from $1,304.20 in unpaid court costs imposed by the Cuyahoga County Court of Common Pleas. Cuyahoga County filed a judicial lien against the debtor on December 31, 2012, for $903.00 in Judgment Lien Case No. JL-12-570021, and later filed two additional judicial liens on January 1, 2013, for $199.70 and $101.50 in Judgment Lien Case Nos. JL-13-577997 and JL-13-583202, respectively.

On June 3, 2009, Western Reserve filed a complaint to foreclose the First Lien on the debtor's real property located at 375 Balmoral Drive, Richmond Heights, Ohio 44143 (the "Balmoral Property"). *Western Reserve Area Agency on Aging v. L. Mitchell, et al.*, Case No. CV-09-694799 (Cuyahoga Cty. Ct. Com. Pl. Apr. 5, 2009). In her answer, the debtor disavowed any interest in the Balmoral Property. The debtor averred that she had transferred the property by recorded

4

quitclaim deed on December 30, 2005, to LAME, Inc., a trade name that the debtor asserted was an actual registered Ohio legal entity, and, therefore, there was no interest upon which Western Reserve could foreclose. In response, Western Reserve amended its complaint to include a request for a declaratory judgment finding that the purported conveyance of the Balmoral Property was void because LAME, Inc., lacked legal personality under Ohio law. On cross-motions for summary judgment, the magistrate recommended entry of summary judgment in favor of Western Reserve, and the Court of Common Pleas adopted that recommendation. Journal Entry Adopting Magistrate's Decision at 1, *Western Reserve Area Agency on Aging.* The court allowed Western Reserve to proceed with the foreclosure of its First Lien on the Balmoral Property, and declared the debtor's attempted conveyance of the Balmoral Property to LAME, Inc., to be a legal nullity. *Id.* at 1-2. Following the debtor's unsuccessful attempts to obtain post-judgment relief, the court scheduled a sheriff's sale of the Balmoral Property for June 24, 2013.

On June 24, 2013, the then-unrepresented debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Filed with the debtor's voluntary petition was Schedule A, in which the debtor stated that she owns the Balmoral Property in fee simple, and Schedule C, in which the debtor claimed a

5

$60,000 homestead exemption based on her use of the Balmoral Property as her primary residence. ECF No. 1. On July 1, 2013, the debtor filed a Motion for Declaratory Judgment Instanter in this bankruptcy proceeding seeking a declaration that LAME, Inc., was and had been the sole legal owner of the Balmoral Property since December 30, 2005. ECF No. 8. On July 8, 2013, the Court informed the debtor that she must file a complaint in accordance with Federal Rules of Bankruptcy Procedure 7008 and 7010 if she wished to further pursue a declaratory judgment. ECF No. 13. The debtor took no further action with respect to obtaining a declaratory judgment, and, later that day, the debtor filed an amended Schedule C again claiming a $60,000 homestead exemption in the Balmoral Property. ECF No. 14.

On September 25, 2013, the debtor filed a motion to avoid the judicial liens of Western Reserve and Cuyahoga County to the extent that they impaired her homestead exemption. ECF No. 33. On October 4, 2013, Western Reserve filed an Objection (ECF No. 41) to the debtor's homestead exemption, and on October 29, 2013, filed a Response (ECF No. 48) to the debtor's motion to avoid Western Reserve's liens. The matter was set for an evidentiary hearing to be held on February 12, 2014. ECF No. 64. On February 4, 2014, the parties agreed to waive the evidentiary hearing and submit the matter for consideration based upon

Joint Stipulations of Fact (ECF No. 71) and supplemental briefs filed by both parties (ECF Nos. 72 and 73).

On February 14, 2014, the Court issued an Order (ECF No. 74) deferring its ruling on the motion to avoid and Western Reserve's objection in light of the forthcoming United States Supreme Court ruling in *Law v. Siegel*, and invited the parties to submit optional briefs addressing the impact, if any, of *Law v. Siegel* on the matter within 14 days of the case being decided. On March 4, 2014, the Supreme Court issued its ruling in *Law v. Siegel* (*In re Law*), __ U.S. __, 134 S. Ct. 1188 (2014). Both parties filed supplemental briefs addressing the Supreme Court's ruling on March 18, 2014. (ECF Nos. 78 and 79). On April 1, 2014, the debtor, at the Court's invitation, filed a motion for leave to amend Schedule C, along with an amended Schedule C, claiming the full Ohio homestead exemption of $132,900. (ECF No. 82). Western Reserve filed a response (ECF No. 83) objecting to the amendment of Schedule C. The Court then took the matter under advisement.

III.   DISCUSSION

The debtor seeks to avoid fully the judgment liens of creditors Western Reserve and Cuyahoga County as impairing her homestead exemption. Western Reserve contests the motion on the basis that the Court should surcharge or deny

7

the debtor's claim of exemption based on her conduct prior to and during the pendency of her bankruptcy case. Alternatively, Western Reserve challenges the debtor's amendment of Schedule C to increase her claimed exemption to $132,900 as having been made in bad faith.

The Court will divide its analysis into five parts: (1) May the Court deny or surcharge the debtor's exemption; (2) is the debtor estopped or otherwise barred from advancing her claim of exemption; (3) does the 2013 amendment to Ohio's homestead exemption apply to pre-amendment judicial liens; (4) what amount, if any, may the debtor actually claim as her homestead exemption; and (5) to what extent, if any, may the debtor avoid the creditors' judicial liens as impairing her exemption?

A.    *May the Court deny or surcharge the debtor's exemption?*

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105 (2007) (internal quotation marks and citations omitted). "Exemptions further this policy goal by allowing a debtor to protect property which is necessary for the survival of both the debtor and the debtor's family." *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010). Accordingly, exemptions are to be construed liberally in

8

favor of the debtor. *See Daugherty v. Central Trust Co.*, 28 Ohio St. 3d 441, 447, 504 N.E.2d 1100, 1104-05 (1986). A party objecting to the debtor's claim of exemptions "has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). *See generally In re Schramm*, 431 B.R. at 397-400 (outlining the policy behind and framework for construing exemptions in favor of the debtor).

Western Reserve asks the Court to exercise its statutory authority under 11 U.S.C. § 105(a) and its inherent sanctioning power to deny the debtor's exemption. The Supreme Court of the United States recently addressed the authority of bankruptcy courts to surcharge or deny exemptions based upon the debtor's conduct in *Law v. Siegel*. In *Law v. Siegel*, the debtor represented to the bankruptcy court that his primary residence was encumbered by two consensual liens that entirely impaired his $75,000 California homestead exemption. *Law v. Siegel*, __ U.S. at __, 134 S. Ct. at 1193. In reality, the debtor fabricated the liens to discourage the Chapter 7 trustee from attempting to sell the home. *Id*. Upon discovering the fraud, the trustee filed a motion with the bankruptcy court to surcharge the entirety of the debtor's exemption to help defray the substantial expenses the trustee incurred challenging the liens. *Id*. The court granted the trustee's motion, and the debtor appealed. The Bankruptcy Appellate Panel of the

9

Ninth Circuit and Court of Appeals for the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed, holding that *"federal* law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Id*. at 1197 (emphasis in original). The Court noted that Section 522 of the Bankruptcy Code sets forth "mind-numbingly detailed" circumstances under which a bankruptcy court may deny a claim of exemption, none of which includes general authority to diminish an exemption based on debtor misconduct. *Id*. at 1196-97. Instead, bankruptcy courts must look to state law to obtain authority to deny a state law-based exemption on grounds other than those provided for in Section 522. Finding no such authority under California law, the Court concluded that surcharging the exemption exceeded the bankruptcy court's authority and was therefore improper. *Id*. at 1198.

Like the debtor in *Law v. Siegel*, the debtor in this case has labored to frustrate attempts to administer assets of the bankruptcy estate. Here, the debtor has relied upon inconsistent representations to Ohio state courts and this court to forestall foreclosure attempts, keep the Balmoral Property out of the hands of the Chapter 7 trustee, and claim a substantial homestead exemption in the property so as to avoid Western Reserve's judicial liens. Even if the Court assumes that the debtor's misconduct was a deliberate scheme to frustrate the Chapter 7 trustee and

10

her creditors, *Law v. Siegel* commands that the Court allow the debtor's claim of exemption unless Ohio law provides otherwise. Because Ohio law does not provide for the surcharging of an exemption, the Court lacks the authority to deny the debtor a homestead exemption to which she is otherwise entitled.

One alternative remedy for debtor misconduct is the imposition of sanctions under Federal Rule of Bankruptcy Procedure 9011. Sanctions available under Rule 9011 include requiring the sanctioned party to pay some or all of the reasonable legal fees and related expenses incurred by another party as a direct result of the sanctionable conduct. Fed. R. Bankr. P. 9011(c)(2). However, cost-shifting sanctions may only be imposed upon standalone motion. *Id*. Western Reserve has not yet filed such a motion for sanctions under Rule 9011, and, therefore, consideration of such sanctions is not properly before the Court.

Having determined that neither federal nor state law provides for the surcharging or denial of the debtor's claim of exemption, the Court now considers whether the debtor is judicially estopped or otherwise barred from advancing her claim of exemption.

B.   <u>Is the debtor estopped or otherwise barred from advancing her claim of exemption?</u>

Western Reserve asserts that the debtor is judicially estopped from arguing that she is the owner of the Balmoral Property and therefore entitled to claim a

11

homestead exemption. The Sixth Circuit Courts of Appeals has applied the judicial estoppel doctrine to "bar[] a party from [] asserting a position that is contrary to the one that the party has asserted under oath in a prior proceeding, where [] the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.' " *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010) (quoting *Browning v. Levy*, 283 F.3d 761, 775-76 (6th Cir. 2002) (internal citation omitted)). The party seeking estoppel must also show that the assertion of the contrary position was not done out of "inadvertence or error," *Browning*, 283 F.3d at 776. Courts must apply judicial estoppel with caution so as to "avoid impinging on the truth-seeking function of the court." *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

Here, the debtor at least twice adopted an unqualified position under oath that directly contradicted representations made to this Court: first, in her answer filed as part of Western Reserve's 2009 foreclosure action against the debtor, and second, through her Motion for Declaratory Judgment (ECF No. 7) in this proceeding. Journal Entry Adopting Magistrate's Decision at 2, *Western Reserve Area Agency on Aging*. In both instances, the debtor disavowed ownership of the Balmoral Property, alleging that it had been transferred by quitclaim deed in

12

December 2005 to LAME, Inc. These statements are in direct opposition to the debtor's sworn representations to this Court that she owns the Balmoral Property in fee simple and thus satisfy the first element of judicial estoppel. Schedule A and Amended Schedule C, ECF Nos. 1 and 9.

However, Western Reserve has failed to demonstrate that this Court or any other court has relied upon the debtor's contrary statements as a preliminary or final matter. The Cuyahoga County Court of Common Pleas never adopted the debtor's position in the 2009 foreclosure proceeding. Instead, that court issued a declaratory judgment that any of the debtor's attempts to transfer the property by quitclaim deed were null and void under Ohio law. *Id.* This Court also declined to adopt the debtor's contrary position that LAME, Inc., owned the Balmoral Property. The Court informed the debtor that her Motion for Declaratory Judgment could only be considered if she restyled its contents as a complaint for declaratory judgment filed in an adversary proceeding. Order for the *Pro Se* Debtor to File an Amended Complaint on or before 7/31/13 if She Wishes to Proceed, ECF No. 10. The debtor failed to do so, and, thus, the Court never addressed the merits of debtor's contrary position. The debtor is therefore not judicially estopped from advancing her claim of exemption.

Western Reserve also argues that the debtor's prior sworn statements

constitute binding judicial admissions. Judicial admissions are typically restricted to matters of fact that would otherwise require evidentiary proof, and courts are "reluctant to treat [opinion and legal conclusions] as judicial admissions." *MacDonald v. General Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997). In order to be binding upon a party, the statement must be "deliberate, clear, and unambiguous." *MacDonald*, 110 F.3d at 340 (citing *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963), *cert. denied*, 376 U.S. 963 (1964)). If evidence conflicts with the alleged admission, courts will typically refrain from finding a judicial admission has been made. *Id*. (citing *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)).

Western Reserve directs the Court's attention to the debtor's Motion for Declaratory Judgment, in which the debtor argued that she had transferred her entire interest in the Balmoral Property to LAME, Inc. Mot. for Declaratory Judgment at 2, ECF No. 8. Western Reserve places special emphasis on paragraph 5, which states that "[a]s of the date of the sale, Luann Mitchell, a private individual, was and continues to be divested of any and all ownership of the property." *Id.* at 2. This statement, while made under oath and without qualification, directly contradicts the debtor's sworn representations in her bankruptcy schedules. The statement is also in the form of a legal conclusion -

one which the Court of Common Pleas squarely rejected as being unsupported by the facts and which contradicts other evidence presented for this Court's review. Therefore, the Court declines to treat the debtor's statements as binding judicial admissions.

The Court now turns its attention to determining whether the 2013 amendment of Ohio's homestead exemption applies to Western Reserve's and Cuyahoga County's judicial liens.

C. *Does the 2013 amendment to Ohio's homestead exemption apply to pre-amendment judicial liens?*

Ohio's most recent amendment of the homestead exemption, effective April 1, 2013, allows a debtor to exempt up to $132,900 of equity in his or her home. Ohio Rev. Code Ann. § 2329.66(A)(1). Though the exemption provided for in Section 2329.66(A)(1) is $125,000, effective March 27, 2013, this amount was increased by $7,900 on April 1, 2013, as part of Ohio's triennial cost of living adjustment. *See* Ohio Rev. Code Ann. § 2329.66(B). This yields a maximum homestead exemption of $132,900 for debtors who filed a bankruptcy petition on or after April 1, 2013. However, Western Reserve argues that this higher exemption amount does not apply to its judicial liens because its liens arose before the amendment went into effect. Instead, Western Reserve would have the Court apply the exemption amount in effect on the dates that the judicial liens arose

15

against the debtor. At the time Western Reserve's and Cuyahoga County's liens arose, the maximum Ohio homestead exemption available to debtors was $21,625. *In re Depascale*, 496 B.R. 860, 866 (Bankr. N.D. Ohio 2013) (Woods, J.).

Other courts interpreting the 2013 amendment have first looked to the language of the amended statute and its enacting legislation to identify the legislature's intent with respect to retroactivity. *See In re Depascale*, 496 B.R. at 869; *In re Pursley*, No. 13-61707, 2014 WL 293557 (Bankr. N.D. Ohio Jan. 23, 2014) (Kendig, J.). Section 3 of House Bill 479, the act which implemented the 2013 amendment to Section 2329.66, states that the 2013 amendment to the statutory exemption limits "appl[ies] to claims accruing on or after the effective date of [the] act." Courts have found this language cryptic and generally unrevealing as to the legislature's intent. *See First Nat'l Bank of Pa. v. Jones*, 2014-Ohio-746 (Ohio Ct. App. 11th Dist., March 3, 2014), at ¶¶ 21-23; *In re Depascale*, 496 B.R. at 867-74.

Bankruptcy courts have instead relied upon earlier decisions interpreting the 2008 exemption amendments that increased the homestead exemption cap. *See In re Depascale*, 496 B.R. at 866-68; *In re Pursley*, 2014 WL 293557, at *2. The Court finds persuasive the reasoning of Judge Woods and Judge Kendig in these two cases. Every bankruptcy court to have addressed the retroactive application of

16

the 2008 amendment concluded that the debtor's petition date, and not the date the avoided lien arose, is the controlling date for determining how large an exemption the debtor may claim. *In re Jaber*, 406 B.R. 756, 762 (Bankr. N.D. Ohio 2009) (Morgenstern-Clarren, J.); *Simon v. Citimortgage, Inc.* (*In re Doubov*), 423 B.R. 505, 514 (Bankr. N.D. Ohio 2010) (Morgenstern-Clarren, J.). Accordingly, the Court holds that the maximum available exemption is the amount in effect as of the debtor's petition date. Therefore, the debtor may claim a maximum exemption of $132,900. Ohio Rev. Code Ann. § 2329.66(A)(1).

D.    *What amount is the debtor actually entitled to claim as her homestead exemption?*

As of the debtor's petition date of June 24, 2013, Ohio law permitted a debtor to claim a homestead exemption of up to $132,900. *Id*. Despite the fact that the debtor listed the estimated value of the Balmoral Property as of the petition date at $85,000, the debtor only claimed a $60,000 homestead exemption on her original and amended Schedule Cs, filed June 24 and July 8, 2013, respectively. ECF Nos. 1 and 9. The debtor later moved to again amend Schedule C on April 1, 2014, to claim the maximum exemption of $132,900. ECF No. 82. Western Reserve objects to the debtor's most recent amendment of her schedules, claiming that it was made in bad faith and should be disallowed. For the reasons that follow, the Court grants the debtor's motion to file her most

17

recent amended Schedule C.

A debtor may generally amend a voluntary petition or schedule as a matter of course at any time before the case is closed.  Fed. R. Bankr. P. 1009(a); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984).  Prior to the Supreme Court's decision in *Law v. Siegel*, the Sixth Circuit Court of Appeals had held that a bankruptcy court may refuse to allow a debtor to amend his or her exemptions where the debtor acted in bad faith or concealed property.  *Lucius*, 741 F.2d at 127.  "In the context of an amendment of exemptions, bad faith is determined by an examination of the totality of the circumstances."  *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003) (citing *Kaelin v. Bassett* (*In re Kaelin*), 308 F.3d 885 (8th Cir. 2002)).  "Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence."  *In re Colvin*, 288 B.R. at 481-82 (citing *Magallanes v. Williams* (*In re Magallanes*), 96 B.R. 253, 255 (B.A.P. 9th Cir. 1988));  *Brown v. Sachs* (*In re Brown*), 56 B.R. 954, 958 (Bankr. E.D. Mich. 1986)).  Bad faith can be found based on an "improper use" test where a debtor is attempting to gain an advantage through the amended claim of exemption; on an "improper purpose" test where a debtor's actions are taken based on malevolence; or when the debtor acts with no basis in law or fact, such as might be found in a Rule 9011 violation.

*In re Lambert*, 09-65025, 2010 WL 3604116, at *3 (Bankr. N.D. Ohio Sept. 14, 2010) (applying three possible operational definitions of bad faith found in *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 255 n.2 (6th Cir. 2006)); *see In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d at 255 n.2.

In writing for a unanimous Supreme Court in *Law v. Siegel*, Justice Scalia noted that barring a debtor from amending his schedules to claim an exemption because of the debtor's misconduct is "much the same thing" as disallowing an initial claim of exemption because of the debtor's misconduct. *Law v. Siegel*, __ U.S. at __, 134 S. Ct. at 1196. Therefore, it is unclear whether prior case law from the Sixth Circuit and other courts permitting a bankruptcy court to refuse to allow a debtor to amend exemptions in the face of bad faith or fraudulent concealment is still good law. Nevertheless, this Court need not determine the extent of any limitation on the right to amend a claim of exemptions under Rule 1009. Even if a bad faith or fraudulent concealment exception to the right to amend claims of exemption survives after *Law v. Siegel*, the facts in this case are insufficient to meet the Sixth Circuit's standard enunciated in *Lucius*.

As evidence of the debtor's bad faith, Western Reserve points to the debtor's statements in her 2009 Ohio state court foreclosure proceeding as well as the debtor's Motion for Declaratory Judgment in this case. In both instances, the

19

debtor unreservedly denied having a legal interest in the Balmoral Property — a conclusion that, if true, would be fatal to her claim of exemption. Western Reserve contends that by now arguing that she owns and resides at the Balmoral Property, the debtor is acting in bad faith by making whatever representation best serves her present interests, regardless of whether the representation is true.

The Court finds this argument unpersuasive. The debtor's behavior may reflect negatively on her overall honesty and credibility, but that reasoning is distinct from showing that *her most recent attempt to amend her schedules* was a product of bad faith. Every Schedule A and C filed with the Court in this case states that the debtor has a fee simple interest in the Balmoral Property. The Court notes that there is a discrepancy between the debtor's Schedule A filed with her voluntary petition for relief, which lists a property value of $60,000, and her original and amended Schedule Cs, which list a property value of $85,000. However, the Court concludes that when the then-unrepresented debtor filed her schedules, she presumably intended to exempt the entire value of her interest in the home up to the statutory limit, but made an error when listing the value of the property. Upon retaining counsel, the debtor filed a second amended Schedule C to ensure that the entirety of her interest in the Balmoral Property, which she again listed as having an estimated value of $85,000, was claimed as exempt. The Court

20

therefore finds that the debtor owns the Balmoral Property in fee simple, and that it has a fair market value of $85,000.

The debtor's interest in the Balmoral Property that is protected by Ohio's homestead exemption is the value of the debtor's interest in the Balmoral property absent any liens up to $132,900. The Court finds that the debtor is entitled to claim an exemption equal to the value of the debtor's interest in the Balmoral Property as of the petition date, $85,000. Next, the Court will consider to what extent the judicial liens of Western Reserve and Cuyahoga County impair the debtor's claim of exemption and are subject to avoidance.

E.    *To what extent, if any, may the debtor avoid Western Reserve's and the Cuyahoga County's judicial liens as impairing her exemption?*

The debtor moves to avoid fully the judgment liens of Western Reserve and Cuyahoga County as impairing her homestead exemption. ECF No. 33.

Section 522 of the Bankruptcy Code provides in pertinent part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is —
> (A) a judicial lien . . .
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of —
> > (i) the lien;
> > (ii) all other liens on the property; and
> > (iii) the amount of the exemption that the debtor could

21

claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. 522(f).

Under § 522(f)(2)(A), the Court adds together all of the liens on the property and the claimed exemptions to determine the extent to which a judgment lien can be avoided. *See Brinley v. LPP Mortgage, Ltd.* (*In re Brinley*), 403 F.3d 415, 421 (6th Cir. 2005) (citing *In re Northern*, 294 B.R. 821 (Bankr. E.D. Tenn. 2003) (finding that courts cannot selectively choose which liens to include in the §522(f)(2) calculation)). The court then subtracts the total value of the property from this figure. Finally, the court subtracts this number from the creditor's lien. If the number is positive, the lien survives to that amount. If the number is negative, the lien is completely avoided. Judicial liens are stripped from a property one at a time from the most junior to the most senior. *See* 11 U.S.C. § 522(f)(2)(B).

Creditor Cuyahoga County holds three judicial liens totaling $1,204.20, all of which are junior to Western Reserve's liens. Western Reserve holds two judicial liens totaling $38,629.79, both of which are senior to Cuyahoga County's liens. Because the creditors' liens do not overlap in priority, the Court need not perform a separate analysis for each individual judicial lien. Furthermore, the

22

Court need not consider the prepetition interest on the judicial liens because adding such interest to the amount of the liens would not alter the result that all liens are fully avoided.

The § 522(f) calculations for Cuyahoga County's liens are as follows:

$1,204.20 (Cuyahoga County's three liens)
$38,629.79 (Western Reserve's two liens)
+     $132,900.00 (debtor's homestead exemption)
$172,733.99 (sum of liens and the debtor's exemption)
–      $85,000.00 (debtor's interest in the property absent any liens)
**$87,733.99 (extent to which Cuyahoga County's liens impair debtor's exemption)**

Since the impairment far exceeds the value of Cuyahoga County's three judicial liens, Cuyahoga County's liens are fully avoided.

The § 522(f) calculations for Western Reserve's judicial liens are as follows:

$38,629.79 (Western Reserve's two liens)
+     $132,900.00 (debtor's homestead exemption)
$171,529.79 (sum of the remaining liens and the debtor's exemption)
–      $85,000.00 (debtor's interest in the property absent any liens)
**$86,529.79 (extent to which Western Reserve's liens impair debtor's exemption)**

Since the impairment exceeds the value of Western Reserve's two judicial liens, Western Reserve's liens are fully avoided.

This memorandum of opinion does not address Western Reserve's separate claim in Adversary Proceeding No. 13-1222 that the debts underlying these

23

judicial liens are nondischargeable under Section 523 of the Bankruptcy Code. This Court had previously held in abeyance further action in the adversary proceeding pending a determination on the debtor's motion to avoid Western Reserve's judicial liens under Section 522(f). Now that the Court has determined that those liens can be avoided, the Court will schedule a status conference in Adversary Proceeding No. 13-1222 in a separate order.

## IV. CONCLUSION

For the aforementioned reasons, the Court overrules Western Reserve Area Agency on Aging's objection to the debtor's most recent amended claim of exemptions. ECF No. 82. The Court finds that the debtor's interest in the Balmoral Property is protected by her claimed Ohio homestead exemption in an amount equal to the debtor's interest in the Balmoral Property absent any liens, $85,000. The Court grants the debtor's Motion to Avoid Liens with Western Reserve Area Agency on Aging and Cuyahoga County Clerk of Courts (ECF No. 33). Western Reserve Area Agency on Aging's judicial liens (Judgment Lien Case Nos. JL-08-354022 and JL-10-423499) and Cuyahoga County Clerk of Courts's judicial liens (Judgment Lien Case Nos. JL-12-570021, JL-13-577977 and JL-13-583202) are fully avoided.

IT IS SO ORDERED.